v. Bradley, KMPG, Knopf v. Jeffery, Waddev. May it please the Court, my name is Andrew Walensky from the Law Department. I've done for plaintiff's appellants. I'll be taking two minutes on the bottle. This appeal turns on a legal error at step one of the form non-convenience analysis. I'd like to make three points in my argument today. First, the district court committed a legal error by stripping home form deference. Talk more slowly and clearly, please, into the microphone. Absolutely, Your Honor. The first point I'd like to make today is that the district court committed a legal error by stripping home form deference. This is the principal legal issue to be decided in this case, and that's whether the motives identified by the district court as form shopping are the kind of illegitimate, abusive motives that permit sharply discounting deference to a U.S. plaintiff under this court's decisions in Irigori, Jodragi, your opinion in Norax, and Jodragi-Calabresi, your opinion in the Bank of Credit and Commercial International v. State Bank of Pakistan case. And the answer to that question is no. Second, that step one error infected the remaining steps of the analysis. The district court gave controlling weight to an adverse presumption about form shopping, and that denied the plaintiffs the benefit of a consideration of convenience based on their choice of New York form under the sliding scale approved by this court in Irigori. And that's very similar to what happened in Norax, and that's that point to the reversal. Third, the appropriate remedy here is vacator and remand for properly weighted form nonconvenience analysis. Again, that's the same result as what happened in Irigori, Norax, and the BCCI case. Because the district court misapplied the form nonanalysis at step one, again, this case should be sent back to Judge McMahon. So what actually happened in the district court? Judge McMahon concluded that this case was an effort to litigate what she called, quote, a fundamentally foreign dispute over the alleged mismanagement of a foreign corporation under foreign law. That's at A1117. And she also emphasized that American courts have repeatedly rejected similar arguments against Credit Suisse, including Judge Masley in the Katan case. But that's really not what the complaint alleges. Judge McMahon's own opinion acknowledges New York-centric allegations, and I'd like to anchor this case in the record and briefly explain why the Southern District was not some random or opportunistic foreign choice. The record shows that Credit Suisse's U.S. presence was not incidental. The complaint alleges, and the district court didn't dispute, that Credit Suisse operated through multiple New York-based entities, and that's including the- Can I just jump in for a moment? Yes, absolutely. I understand your argument that you said you wanted to explain that the selection of the Southern District was not a random or completely unconnected choice. But the thing that I'm wondering is, with regard to the deference of the- that should be given to the chosen form, you started out at the very beginning saying something about that there is no evidence that the selection was abusive to defendants, that type of thing. But I guess the question I have is, don't we also consider questions of just tactical advantage as opposed to this was just pure convenience? It made sense. Let's file our claim here because it's all about what happened here. I understand there are connections. I'm not- there are connections here. There are arguably connections in Switzerland as well. But what is the- what should we be looking at on this question of deference? Because you do note it's a sliding scale, and so it's not like a plaintiff has to have completely bad faith motives or trying to be abusive and harassing. And it's also not the case that we don't consider the plaintiff's convenience at all. And so I guess I'm just wondering, what is it about this circumstance that says that the deference should be great here beyond this is the form that the plaintiff selected? Yeah, understood. And so this goes to the form shopping question that Judge McMahon sort of seized on. So the Norks case, again, to Judge's opinion, quotes Gulf Oil, and they discuss and accurately describe form shopping as both justice but blended with some harassment. And, you know, form shopping, again, this is straight out of the Norks case. The tactical advantage question, to your point, it's not just tactical advantage. It's a tactical advantage, quote, resulting from local laws that favor the plaintiff's case. Or habitual generosity of juries, popularity of the plaintiff or unpopularity of the defendant, inconvenience and expense of the defendant. Those are the Gulf Oil factors, and that's what's set forth in Norks. And Judge McMahon, frankly, doesn't really discuss or make any findings as to those factors. She adopted wholesale, without legal citation, Credit Suisse's argument that this case was the same case in a different forum to get a different answer from a different judge. Well, on that, I take it your argument is that this case is totally different from Catalan because in Catalan it was a derivative action, and therefore the plaintiffs were Swiss. Well, this is not, and therefore the plaintiffs are whatever they are, but not those. And that the error that the district court made was to assume that these were the same plaintiffs, and therefore they were not given advantage. They shouldn't be given advantage. And that that was an error, and she never really discussed other reasons why there might be. A, forum shopping or not, because she based it on the forum shopping idea that it was wrong. That's exactly right. I'm sorry, Your Honor. That's exactly right, Your Honor. My predecessor counsel, they did not file the same derivative action. They filed direct claims on a classified basis. And that is, as you say, it's a different case. And there's also different defendants. There's new defendants in this case. There's KPMG and there's the KPMG plaintiffs. Yeah, but that's less important in terms of whether deference should be given to a plaintiff's choice. But this is a different plaintiff, so that whatever was done in another one is not really relevant to this one. My main problem is that some of the arguments that you make about why Switzerland is not a terribly convenient, not there, are also arguments that look like forum shopping. It is Switzerland does not allow class action. Switzerland does not have a jury. Switzerland asks for a bond. All those are under our cases, perhaps correctly or not, but under our cases are not relevant reasons why it can't be in Switzerland. And my question is, isn't the fact that you're trying to avoid these things a form of forum shopping? Now, that may not be enough because a plaintiff has a right to pick what is more convenient. But isn't there some inconsistency in your argument? Candidly, no, and respectfully, no, Your Honor. A plaintiff is allowed, as you say, to make decisions as to where to bring their claims. And, yes, there are a host of problems with bringing this case in Switzerland, and that's why it's not an adequate forum, the bond requirement, the class device. These are all reasons why Switzerland is not an adequate forum. I think you're missing Judge Calabresi's point, which is that we've held those are not grounds to say it's an inconvenient forum. They just have different legal remedies, different legal requirements, and you find the ones in New York more favorable to you. That doesn't seem to be a ground for favoring the New York forum. It almost smacks of forum shopping. This is some place where you think you would have procedural and remedial advantages. Well, that's permissible, though. Plaintiffs are allowed to. So your argument is you have a right, if you are the right plaintiff with an issue which is a New York issue, you have a right to pick things which are more favorable. It doesn't exclude the other, but that is not forum shopping either. That's the nature of your argument. That's right, Your Honor. And so long as there is no improper harassment or any of those other motives cited in the Balfoyle case or the Norris case, that's exactly right. I do see my time's elapsed. If the panel has other questions. All right. Thank you. Thanks very much. Good morning, Your Honors. May it please the Court. Is that loud enough, Your Honors? Jason Hall from Cahill Gordon for the Credit Suisse Defendants. I'm going to address the forum nonconvenience issues on behalf of all the defendants. Your Honors, Judge McMahon applied the irrigory factors carefully and thoroughly in a 91-page reasoned way. No, no. Let's just go to the point. She said that this was forum shopping because it was an attempt to re-argue capital, and that's wrong because this is a different plaintiff, and so that had nothing to do with it. Then the question is, has she looked to what the issue in the case is, and plaintiffs claim that the issue here is the mismanagement by the New York Bank rather than mismanagement in Switzerland. Now, why isn't that, if you have a plaintiff that is sufficiently New York, a claim that this is mismanagement in New York, enough so that deference should be given, regardless of whether this is more advantageous or less advantageous. And that, if that is so, then didn't the district court err on forum nonconvenience and shouldn't we send it back? Judge Calabresi, let me address the first part of what you asked first, the part relating to the Catan complaint. Catan is a man who lives in Brooklyn named Ezra Catan. Catan was a derivative plaintiff purporting to stand in the shoes of Credit Suisse. He filed a shareholder derivative claim as a shareholder of Credit Suisse, as was his right, and he filed that case in New York because he lived in New York. So Judge Justice Maisley in the state court didn't view the plaintiff as Credit Suisse in the derivative case. But he was. I mean, if he's derivative, that's what it is. So that the Catan case is very easy because whatever the judge said there, that was a Swiss plaintiff. That's the end of that case. It's a Swiss plaintiff. I take Your Honor's point to the extent you view Credit Suisse as the real party and interest. But Judge Justice Maisley in the state court, if we can go back and look at that opinion, she focuses on the fact that the plaintiff there, the named… That may be that the state court may have been correct or incorrect in any of that. But to use that as a basis in this case is incorrect because maybe some New York judge said, I don't care. But that would not be the issue. Your Honor, two things I think are responsive to your question. One is in Coster, in the Supreme Court, the U.S. Supreme Court says what we have here in a class action is a representative plaintiff. This case, the shareholder, an individual shareholder, two individual shareholders, purports to act on behalf of Credit Suisse shareholders worldwide, 90% of whom are not in the United States. We don't know. Well, that's not clear. In the case that was settled, it was said that 44% of a par value of bondholders. We don't have clearly here what the percentage of stockholders are New Yorkers. We don't have anything said, the number that are Swiss, as against anything else. What we know is that these people are, I understand Stevenson is from Indiana, but there are others who are from New York. Now why isn't that enough to say this is a New York plaintiff? In the first instance, and then do a correct analysis thereafter. Your Honor, I would refer you to page 28 of our brief. I think the plaintiff alleges in the amended complaint that only around 10% of the putative class is based in the United States, which implies, obviously suggests that 90% is elsewhere. Your Honor, we respectfully submit that this case could not be more Swiss. It is a Swiss corporate governance dispute under Swiss law about a Swiss bank. But that isn't what the plaintiff's complaint is. I understand that there's plenty of reason for an argument that there were things wrong in Switzerland. That caused them to lose confidence. And the merits that may be, that may not. But why isn't that as a complaint a different one? And that it has been incorrect for us to assume that the plaintiff is bringing a complaint that was based on Switzerland. Well, so the governance of Credit Suisse is in Switzerland. The corporate officers sit in Switzerland. The board sits in Switzerland, meets in Switzerland. And the plaintiff's complaint in this case, or in Catan, and I would remind the court that 100 paragraphs of the Stevenson complaint are copied and pasted verbatim from Catan. It was the same plaintiff's lawyers that filed it. We know that. Okay. This case is not just about New York, as alleged in the Stevenson complaint. It involves allegations. It isn't a question of whether it is just by New York. Of course there would be some Swiss things. The question is, is it also about a New York wrong? That is, if we have a plaintiff. Let's just take somebody else. A plaintiff who complains that wrong was – who is, for a moment, assume with me, it is a plaintiff who is a New Yorker. I'm not saying that's so here. But assume a plaintiff who is a New Yorker who claims that there is a New York wrong and also a Swiss wrong. Doesn't that plaintiff deserve deference as to his or her choice of New York? Then once that deference is given, the court may go through all the other factors and decide for an inconvenience. But as a starting point, if you have that situation, isn't deference due? And my problem is that if we can assume that this case is like that one, then the fact that no deference was due in this case was an error, and we should send it back and say there is deference. Now decide. Your Honor, we submit that deference – that the judge in the district court gave appropriate deference to the plaintiff's choice. Here the court recognized that this is a class action. The Supreme Court in Coster says the deference to be given to a class representative's choice of forum is different than an individual New York plaintiff's choice of forum would be because there are necessarily credit suite shareholders everywhere. And to the point about New York connections, the New York connections to us seem manufactured, as Judge McMahon found. They allege their claims against credit suite entities and don't connect those to any factual wrongs in the complaint. They name credit suite employee individuals who are, yes, based in New York, but don't then connect those to any factual allegations in the complaint. So what really seems to us to be going on and what Judge McMahon found is there is an effort to dress this up like it has New York connections when what's really being challenged is the governance of credit suites, which led to losses for shareholders, allegedly, in Switzerland. Things that happened in Mozambique, things that happened in Asia, things that happened in the U.K., and, yes, things that happened in New York, but the governance of this bank and how that affected all of its shareholders around the world. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Jamie Wine of Latham & Watkins, and I'm arguing today on behalf of the group of KPMG defendants. I just want to add a couple points briefly and to pick up where we just left off, which is this point of the fact that plaintiffs should not be afforded deference when they name local parties in an attempt to manufacture jurisdiction. And that's exactly what happened here with regard to the KPMG defendants, and the district court correctly found that plaintiffs, in fact, sued the wrong KPMG defendant. So what happened here is that the KPMG U.S. firm, which is known as KPMG LLP, was not Credit Suisse's auditor, but that is the main entity that's named as a defendant here. None of the individuals affiliated with KPMG who were named as defendants are alleged to have any role in any audit. Did the district court address any of these issues? Yes, the district court did this. After finding forum nonconvenience, did they address specifically what you're raising now? Correct. So if you look, for example, in the district court's decision on A1074 in the record, that's where the district court held that the plaintiffs, quote, sued the wrong KPMG defendant. The court said that outright. And what happened is KPMG, the U.S. firm, was not the auditor. It's the Swiss firm, which is known as KPMG AG. I know the names can get confusing. But it was the Swiss firm that was the auditor throughout the relevant time period. And this is undisputed, as the district court also found. The plaintiffs' appellants, they actually recognize this and acknowledge it in their briefing before your honors, in their reply brief at docket 721. They admit that the Swiss firm was Credit Suisse's auditor. If you look at publicly filed annual reports from Credit Suisse, which are in the record and on which the plaintiffs relied below, they state expressly that it was the Swiss firm that was the auditor at the relevant time. And I think, as this court knows, the way that these networks of member firms, of accounting firms, are structured, they're not one firm throughout the world. And this is well settled in the Second Circuit. The district court recognized this in its opinion. It said that independent accounting firms who are each members of a multinational network are, quote, not the same. This principle was found in the Fortress case, which is cited in the briefing below, and that this court affirmed. I believe, Judge Calabrese, you were on the panel. In that case, the court found that there was no basis for discovery from KPMG LLP, the U.S. firm, because there, the audits and investigations at issue were conducted by different KPMG member firms that are distinct in a legal sense from KPMG LLP. That's the situation we have here. And if you look at the facts alleged, there are no well-pled facts alleging any involvement in the auditors by any of the KPMG defendants actually named here. The target of their complaints is the Swiss firm, which is conspicuously not named. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the court. Natasha Erzbischoff from Brown Wetnick on behalf of defendant appellee Jeffrey Wada. I would like to make two brief points today in support of Mr. Wada's request. This court affirmed dismissal of the Swiss law claims against him. First, as we note in our briefing, Mr. Wada joins in the other defendants' arguments for affirming dismissal based on foreign nonconvenience. I know you only have a short amount of time, but a little slower, please. Oh, sure. Second, if this court should decide not to affirm based on foreign nonconvenience, Mr. Wada respectfully requests that this court still affirm dismissal of these claims specifically as to him based on plaintiff's failure to state a claim under Rule 12b6. Did the district court reach that question? No, Your Honor. No. So that unlike the previous KMG, if we were to decide against you, we could perfectly well, on the foreign nonconvenience, we could just say to the district court, you have to decide it. You're asking us to decide a question the district court did not decide. That's right. And, Your Honors, as you are aware, have the ability to affirm on any grounds that are supported in the record.  So continuing on from there, regardless of what this court may think of the substance of plaintiff's claims, the Swiss Code of Obligations on its face does not apply to Mr. Wada. Here, the relevant articles of the Swiss Code apply only to directors, auditors, managers, officers, employees, and agents of a Swiss company. Plaintiffs do not allege that Mr. Wada ever held any of these positions, and indeed, he never did. Plaintiffs have, in fact, implicitly conceded this point. In the reply brief, plaintiffs do not mention Mr. Wada's argument on this issue at all, despite spending eight pages responding to the other defendants' alternative Swiss law arguments. As a result, plaintiffs have waived opposition to this point. In sum, regardless of whether this court decides to reach alternative grounds for dismissing as to the other defendants, it should reach them as to Mr. Wada because the cited provisions clearly do not apply to him. Thank you. Thank you. Okay. I'm going to ask you right directly. What do you have to show that the plaintiffs were primarily New Yorkers or significantly New Yorkers, and what do you have to show that they made a claim specifically with enough to make it plausible under Iqbal and so on that there was a wrong in New York that they were suing on, regardless of whether there was also a wrong in Switzerland? Thank you, Your Honor. So to your first question, Plaintiff Watone Bowles is a New Yorker. That's in the complaint. That's on the face of the complaint. But is it enough that one member of a class be of New York to give deference to that as if the class is New York? I mean, absolutely. I mean, there's – of course, if this was a corporation based out of New York, it would be a different point. And as my friend in argument made, there is Supreme Court law on – Look, I understand you're arguing that as a matter of logic that is what we should conclude, but this can hardly be the first class action in which members come from diverse places. Do you have a case that suggests that, as you've just argued, having a class member who is a New York resident gives you the right to sue or gives you the right to a presumption that sued in that person's state is a convenient forum? I don't have – Is that a case we should look at? I don't have a case on that point. I'm happy to – Because I find it hard to believe that we're the first court considering this. And I agree. How about the second part of Judge Calabresi's question? And to your point, Your Honor, about the connections to New York, I mean, this is – the complaint has a whole narrative about Credit Suisse's management in New York. This is the wealth management program. This is paragraphs 137 to 151. There's U.S.-facing operations and U.S. clients. Paragraphs 124 to 131. Your complaint seems to be about decisions made by the top management in Switzerland, or have I overlooked something? Respectfully, there is plenty about what was happening in New York specifically. For Credit Suisse, there is investment banking activities conducted through the United States and New York-based operations, exposing the firm to risk. That's Archegos and Greensill-related losses. This is in the complaint. Now, the district court seems to think that you were alleging that that was because of management decisions made in Switzerland. Is that not the correct way to view your allegations? I mean, there are management decisions certainly being made in Switzerland. That's where the head honchos are. But that doesn't mean that that insulates all of the other New York-based conduct. Again, that's in the complaint about what was going on in New York, the wealth management business, the investment banking business. These are decisions that are being made by individuals in New York that wound up causing massive losses to the company. And as to KPMG, yes, this statutory auditor's point about KPMG AG, a Swiss entity, being the relevance of this entity, candidly, that's a red herring. The steal-the-list scandal happened in New York. That's where KPMG New York was trying to obtain secret lists from the PCAOB to see how audits were going to be happening of U.S.-based entities. Look, that's fine, but I'd like you to return to the question of how much New York was actually – actions were actually charged. Because what I've got to try to figure out is whether the district court was misled by the importance of some Swiss behavior into making a foreign nonconvenience judgment about what was going on, that we should ask her to reconsider, or whether she was correct in her judgment as to who the plaintiff was and what the New York thing was, in which case her judgment as to foreign nonconvenience is of great difference. It's a question of where we differ, and that depends significantly on how much New York both the plaintiff was, even though it's a class action, and the complaint was. So to your question about the New Yorkness of the defendants in this case, again, I can refer you to paragraphs 85 to 94 of the complaint. That gets into the Credit Suisse U.S.-based entities. Paragraphs 124 to 131 of the complaint, that's talking about the investment banking decisions in New York that were happening at the Credit Suisse entity. I can refer you to paragraphs 137 to 151 of the complaint. That's the wealth management, Credit Suisse New York wealth management, U.S.-facing operations that were implicated in the misconduct. For KPMG, paragraphs 119 to about 135, that gets into that whole steal-the-list scandal. That gets into all of the 5,000 employees at KPMG in New York City, the global headquarters of that company, their involvement in this case. So there is absolutely a New York and U.S. nexus to this case. That, absent the finding of some sort of improper motive, again, that's going back to Norex, that's going back to Irigori. Absent that finding of some sort of improper motive, the plaintiff's choice of New York should be afforded that deference. And that goes to your point, Your Honor. Thank you. Thank you very much. All right. Yes, thank you to all of you. We will take this case under advisement as well. And that was our last case scheduled for argument. And so with that, I guess we are adjourned.